# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MIKE SHALES, JOHN BRYAN, SR., | ) | |
| AL OROSZ, DAN BREJC, | ) | |
| TOBY KOTH, and VERN BAUMAN | ) | |
| as TRUSTEES OF THE FOX | ) | |
| VALLEY LABORERS' HEALTH | ) | |
| AND WELFARE FUND, | ) | |
| | ) | |
| and | ) | Case No. 11 C 1094 |
| | ) | |
| MIKE SHALES, JOHN BRYAN, SR., | ) | Magistrate Judge Morton Denlow |
| AL OROSZ, TOBY KOTH, | ) | |
| VERN BAUMAN, and DAN BREJC | ) | |
| as TRUSTEES OF THE FOX | ) | |
| VALLEY LABORERS' PENSION | ) | |
| FUND, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| T. MANNING CONCRETE, INC., | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THOMAS MANNING, | ) | |
| individually, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Mike Shales, John Bryan, Sr., Al Orosz, Dan Brejc, Toby Koth, and Vern

Bauman, as Trustees of The Fox Valley Laborers' Health and Welfare Fund, and Mike

Shales, John Bryan, Sr., Al Orosz, Toby Koth, Vern Bauman, and Dan Brejc, as Trustees of The Fox Valley Laborers' Pension Fund (collectively "the Funds" or "Plaintiffs"), bring this action seeking an Order of Contempt directed personally at Thomas Manning ("Manning" or "Respondent"), President and sole shareholder of T. Manning Concrete, Inc., ("the Company"or "Defendant") for his failure to abide by a citation to discover assets served on the Company and for personally causing and allowing the transfer and disposition of T. Manning Concrete, Inc.'s assets in violation of the citation.

The Funds ask that a judgment be entered against Manning individually in the amount of $199,010.28.[1]  This represents: $139,000 of Respondent's personal funds that he put into a client trust account and used to pay the Company's payroll after the Company's bank account at Golden Eagle Community Bank was frozen; $41,700.78 in funds that were paid out of the Company's Golden Eagle Community Bank account after the citation was served on the Company, but before that account was frozen by a separate citation served on the bank; and $18,309.50 in attorney fees and costs.  Tr. 10; Dkt. 95 ¶4[2].

The Court held an evidentiary hearing on February 8, 2012.  Dkt. 92.  At the hearing two witnesses testified: 1) Thomas Manning, President of T. Manning Concrete, Inc.; and 2) Dennis Ward, registered agent and accountant for T. Manning Concrete, Inc.  Counsel

---

[1]The Funds' brief originally asked the Court to enter a judgment against Respondent for $114,988.18 but during the February 8, 2012 hearing, counsel for the Funds indicated that they had modified their request based on new information obtained.  Tr. 10.

[2]All citations to "Tr." refer to the transcript of the evidentiary hearing held by this Court on February 8, 2012 and continued to February 10, 2012 for closing arguments.  All citations to "Dkt." refer to the docket entries in this case.

presented closing arguments on February 10, 2012.  Dkt. 94.  The Court has carefully considered the parties' briefs, the testimony of the two witnesses, the parties' trial exhibits, the parties' joint stipulation of facts, and the opening and closing arguments of counsel.  The following represent the Courts's findings of facts and conclusions of law.  To the extent certain findings of fact may be deemed conclusions of law, they shall also be considered conclusions.  Similarly, to the extent matters contained in the conclusions of law may be deemed findings of fact, they shall also be considered findings.

## I.  FINDINGS OF FACT

**A.**    **ISSUANCE OF THE CITATION TO DISCOVER ASSETS**.

1. Tom Manning is and was the President and sole shareholder of T. Manning Concrete, Inc., for all relevant periods of time.  Stip. 10[3]; Tr. 23.

2. On August 3, 2011, this Court entered an agreed judgment in favor of Plaintiffs and against T. Manning Concrete, Inc., in the amount of $5,941,720.15.  Dkts. 39, 40.

3.  In an attempt to collect the judgment, Plaintiffs instituted supplementary proceedings in the form of citations to discover assets directed to PNC Bank, The National Bank, Mid America Bank, T. Manning Concrete, Inc., Harris Bank, and American Community Bank & Trust seeking to prevent the transfer or disposition of Defendant's assets.  Dkt. 43.

_____

[3]All citations to "Stip." refer to Plaintiffs' and Respondent's Joint Stipulation of Facts.  Dkt. 97.

4. This contempt proceeding arises out of the citation to discover assets served upon defendant T. Manning Concrete, Inc. On August 17, 2011,[4] this Court issued a citation to discover assets against T. Manning Concrete, Inc., (the "Citation") for the $5,941,720.15 judgment. Stip. Ex. A.

5. The Citation stated in relevant part:

**T. MANNING CONCRETE, INC., IS PROHIBITED from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from execution or garnishment belonging to T. MANNING CONCRETE, INC., that it may be entitled to or that may be acquired by or become due to it and from paying over or otherwise disposing of any money not so exempt, that is due or becomes due to T. MANNING CONCRETE, INC., until further order of court or termination of the proceedings.**

*Id.* (emphasis in original).

6. The Citation return date was September 13, 2011, and in addition to the prohibition regarding the transfer or disposition of assets, it directed Tom Manning, as President of T. Manning Concrete, Inc., to appear at the office of Plaintiffs' attorney to be examined under oath and to bring certain books, records and documents reflecting T. Manning Concrete, Inc.'s assets and financial status. *Id.*

---

[4] The parties' joint stipulation of facts states that the citation was issued on August 18, 2011, but the citation itself is dated August 17, 2011.

**B. SERVICE OF THE CITATION TO DISCOVER ASSETS UPON DEFENDANT.**

**1. Dennis Ward, Registered Agent**

7.  On August 18, 2011, counsel for The Funds caused a copy of the Citation to be mailed by Certified Mail to Dennis Ward, the Defendant's registered agent addressed as follows:

> T. Manning Concrete
> Dennis Ward, Reg Agent
> 1250 Larkin Avenue
> Suite 200
> Elgin, IL 60123.

Stip. ¶3.

8.  Dennis Ward ("Ward") was the registered agent for Defendant at the time of service. Ward is a partner in the accounting firm of Ward, Lane & Associates, with its office located at 1250 Larkin Avenue, Suite 200, Elgin, IL 60123. Stip. ¶4. On August 19, 2011, Jackie Schroeder, an accountant employed by Ward, Lane & Associates, accepted and signed for the certified letter addressed to Dennis Ward, Registered Agent. Stip. ¶5, ¶6; Stip. Ex. B. On August 19, 2011, Ward received and reviewed the envelope's contents and determined that it was a Citation to Discover Assets for T. Manning Concrete, Inc. Tr. 88-89; Pls.' Ex. B; Stip. ¶8.

9.  On August 19, 2011, Ward participated in two telephone conversations with attorneys from Laner, Muchin, Dombrow, Becker, Levin and Tominberg, Ltd. ("Laner Muchin"), the Company's counsel. Pls.' Ex. B., p. 3. The first telephone conversation was about "seizure of assets" and included: Ward; Michelle Reynolds, counsel for the Funds; and

Will Daniels ("Daniels")[5] and Scott Gore ("Gore") of Laner Muchin. *Id.*; Tr. 30. The second telephone conversation was between only Ward and Daniels and addressed "the Fund's recent action to freeze the assets of T. Manning Concrete and the Company's inability to pay payroll." Pls.' Ex. B, p. 3.

10. Later in the day on August 19, Ward sent a facsimile to Gore and Daniels at Laner Muchin. Tr. 88-89; Pls.' Ex. B, p. 6. In the cover letter, Ward wrote: "Copies of what I Received [and] what Bank Received, As Discussed" and signed his initials. Pls.' Ex. B, p. 6; Tr. 109. Three documents were attached to the facsimile. The first document was a copy of the third party citation to discover assets issued to National Bank. *Id.* at p. 7-10. The second document was a copy of the original complaint in the case. *Id.* at p. 17-20. The third document was the Citation directed to T. Manning Concrete, Inc. which he received as registered agent. *Id.* at p. 21-27. As of August 19, 2011, Ward clearly understood that the assets of the Company were frozen and payroll could not be paid from Company assets. The Court rejects any testimony to the contrary offered by Ward.

11. On either August 22 or 23, 2011, Ward placed a phone call to Manning. Tr. 91. Ward was upset that the Citation required the production of twelve categories of documents. Tr. 91-93. At the time of this conversation, the Company was required not to transfer or dispose of its assets.

---

[5]Page 30 of the transcript misidentifies Will Daniels as Walter Daniels, but the record indicates that the initials "WTD" indicated in the time sheet refer to Will Daniels. Pls.' Ex. B, p. 6; Tr. 123-24.

12. Ward's testimony was not credible in several important respects. Ward testified that he did not understand the nature of a citation to discover assets and that he did not understand that the Citation prohibited someone from transferring assets of the Company. Tr. 95. This was in direct contradiction of his earlier deposition testimony during which he testified that he understood that the Citation prohibited T. Manning Concrete from transferring or distributing assets of the Company. Tr. 96. The Court finds that Ward was impeached at trial on this issue. Ward also testified that he read through the first nine or ten items on the list of twelve document categories that were to be produced on the return date, which were in normal font. Tr. 113-14. The very next paragraph of the Citation is in bold font and begins with "T. MANNING CONCRETE, INC., IS PROHIBITED..." It is not credible that Ward did not read the bold and partially capitalized prohibition. As an accountant for over thirty years, Ward understood the plain language of the Citation which clearly prohibits any transfers or disposition of Company property. His testimony to the contrary was simply not credible. T. 114-15.

**2. Thomas Manning, President**

13.  On August 18, 2011, counsel for the Fund also caused a copy of the Citation to be mailed by certified mail addressed as follows:

> T. Manning Concrete, Inc.
> C/o Tom Manning, President
> 11804 S IL Route 47
> Huntley, IL 60142-9662

Stip. ¶9.  11804 S IL Route 47, Huntley IL 60142-9662 was the business address of T. Manning Concrete, Inc., for all relevant periods of time and the Company generally received mail at that address.  Stip. ¶11.  On August 22, 2011, the Citation was delivered to T. Manning Concrete, Inc. by the United States Postal Service and Nicole Frohling, an employee of the Company, signed a receipt. Stip. ¶ 13.

14.  Prior to August 23, 2011, Manning was advised by representatives of one or more banks at which the Company then had operating accounts that the Funds had served one or more third-party citations to discover assets that froze the Company's accounts there.  *Id.*

15.  On August 22 or 23, 2011, Manning and Ward had a discussion regarding the citation that Ward received.  On August 22, 2011, Manning had a conversation which lasted approximately thirty minutes with Gore at Laner Muchin regarding the "bank issue."  Pls.' Ex. B, p. 5; Tr. 31.  As of August 22, 2011, at the very latest, Manning was personally aware that the Funds had taken steps to freeze the bank accounts of T. Manning Concrete, Inc. and payroll could not be paid as scheduled.  *Id.;* Tr. 78-79.  Further, as of August 22, 2011, Manning was aware of and had seen the Citation.  It is not credible that the Citation delivered

to the Company's address in the care of Tom Manning would have been blindly forwarded to the Company's attorneys without Manning having reviewed the Citation or being advised that the Citation had been received. Manning has demonstrated a pattern of seeking to avoid orders of this Court, such as failing to disclose all bank accounts in an affidavit in which he was required to do so by court order. Tr. 52-54. Manning's credibility regarding whether he knew about the citation before he opened the Golden Eagle Community Bank account is also cast into doubt based on inconsistencies between his answers to a request to admit issued by the Funds in January 2012 and his testimony at the hearing. Tr. 57-59. For example, in the request to admit, Manning denied that he had knowledge of the Citation prior to August 23, 2012, but at the hearing indicated that he could not remember. Tr. 57. In the request to admit, Manning denied that he spoke to Gore prior to August 23, 2012, but at the hearing admitted that he must have spoken to Gore on August 22, 2012. Tr. 58. In the request to admit, Manning denied that he had received, reviewed, or knew about the Citation prior to opening the Golden Eagle account. *Id.* At the hearing, he admitted he knew of the document but continued to assert he did not know that the Citation prevented him from issuing payroll from Company funds. Tr. 58-59.

16. Manning testified that if he had read the Citation, he would have known that paying the wages was not appropriate, indicating that the language of the Citation is a clear and unequivocal command that both Manning and Ward could understand. Tr. 38-39.

## C.   THE GOLDEN EAGLE COMMUNITY BANK ACCOUNT.

17. On August 23, 2011, Manning caused an account to be opened at Golden Eagle Community Bank in the name of T. Manning Concrete, Inc., with an initial deposit of $100. Stip. ¶14.

18. On August 24, 2011, Manning caused a check payable to T. Manning Concrete, Inc., in the amount of $113,988.18 to be endorsed and deposited in T. Manning Concrete, Inc.'s account at Golden Eagle Community Bank. Stip. ¶15; Stip. Ex. E. Manning deposited the $113,988.18 check into the Golden Eagle Community Bank Account with the intent to issue payroll checks to employees despite knowing there were liens on all other Company accounts. Tr. 40-41.

19. On or about August 26, 2011, Manning directed the accountants for the Company at Ward, Lane & Associates, to issue payroll checks for employees of the Company from the Golden Eagle Community Bank account. Stip. ¶16.

20. On August 29, 2011, a third-party citation to discover assets was issued as to the Company's bank account at Golden Eagle Community Bank. Dkt. 63. Plaintiffs faxed the citation to Golden Eagle Bank on August 29, 2011, and mailed a hard copy on August 30, 2011. Pls.' Mot. ¶9, Ex. D.

21. Golden Eagle Bank produced the following documents in response: 1) copies of T. Manning Concrete, Inc.'s signature card and corporate resolution; 2) a bank statement dated August 31, 2011; 3) copies of two deposit transactions; and 4) a print-out of the account activity for T. Manning Concrete, Inc.'s account at the bank. Pls.' Mot. Ex. E. Thirty-nine checks or debits totaling $41,700.78 cleared the Company's account at Golden

Eagle Community Bank after the account was opened on August 23, 2011 and before the Funds served a third-party citation to discover assets on the bank and froze the funds in that account. Stip. ¶17; Stip. Ex. F. As of the evidentiary hearing, the Company's Golden Eagle account showed a balance of $72,387.40. Resp.'s Ex. 2.

22. On August 30, 2011, the Company initiated Chapter 7 bankruptcy proceedings. Pls.' Mot. ¶12. Plaintiffs were not listed as a creditor in the bankruptcy filings. *Id.*

**D. THE CLIENT TRUST ACCOUNT.**

23. Upon learning that a number of checks had not cleared the Golden Eagle Community Bank account, Manning arranged to use his personal funds for payment of the Company payroll. Tr. 47.

24. In particular, Manning sought to pay wages to employees who did not have their checks honored by Golden Eagle. Tr. 46-47, 70. Manning accomplished this with the assistance of an attorney, Rob Hanlon, who is not representing the Company or Manning in this case. Tr. 46-47. Hanlon established a client trust account using Manning's personal funds. *Id.*; Tr. 98-99. Ward, Lane & Associates then prepared the checks that were drawn off of that account. Tr. 98-99. Manning subsequently took an assignment of those employees' rights in the bankruptcy proceeding and asserted a priority wage claim to those funds. Tr. 18-19.

**E. SUMMARY FINDINGS**

25. Prior to the opening of the Golden Eagle Community Bank account, Thomas Manning as President of T. Manning Concrete, Inc., Dennis Ward as the Registered Agent, and the Company's attorneys had all been served with the Citation.

26. At the time the Golden Eagle Bank account was opened, Manning was aware that all of the Company's existing accounts had been frozen and the Funds were trying to freeze all of the Company's assets by means of the Citation that had been served on the Company.

27. Despite this knowledge, Manning opened the Golden Eagle Bank account with the intent to violate the Citation. His sole purpose was to put the $114, 088.18 outside the reach of the Funds and the scope of the Court's Citation so that he could disburse those funds to his employees. Manning and Ward worked together to issue checks from the Golden Eagle Community Bank account that they both knew violated the terms of the Citation issued from this Court.

28. Manning had no intention of complying with the Citation and he deliberately violated its injunction provisions. Manning intentionally caused $41,700.78 of the Company's assets to be transferred and disbursed in violation of the Citation. This blatant disregard of the Court's Citation caused $41,700.78 of the Company's assets to be removed from the reach of the Court. It is only due to the Funds' diligence in pursuing the Golden Eagle Community Bank account that the amount of money transferred and disposed of was not greater.

## II.  CONCLUSIONS OF LAW

## A.  SUPPLEMENTARY PROCEEDINGS.

29.  The parties, including the Funds, the Company, and Respondent individually, have consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c).  Dkts. 30, 93.  A United States magistrate judge has the power to exercise criminal and civil contempt authority in civil consent cases pursuant to 28 U.S.C. § 636(e) (3), (4).

30.  Federal Rule of Civil Procedure 69 provides that supplementary proceedings to enforce a money judgment must "accord with the procedure of the state where the court is located."  Fed. R. Civ. P. 69(a)(1).  In Illinois, 735 ILCS 5/2-1402 and Illinois Supreme Court Rule 277 govern supplementary proceedings.  A citation to discover assets is a supplementary proceeding that enables a judgment creditor to "discover assets or income of the debtor not exempt from the enforcement of the judgment" and to "compel[ ] the application of non-exempt assets or income discovered toward the payment of the amount due under the judgment."  735 ILCS 5/2-1402(a).  The citation may "prohibit the party to whom it is directed from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from the enforcement of a judgment."  735 ILCS 5/2-1402(f)(1).  The purpose of the citation is to assist a judgment creditor in asset discovery and satisfaction of judgment.  *Dexia Crédit Local v. Rogan*, 629 F.3d 612, 622 (7th Cir. 2010); *Cacok v. Covington*, 11 F.3d 52, 54 (7th Cir. 1997).  The restraining provision is intended to "[forestall] the judgment debtor or a third party from frustrating the supplementary proceedings before the judgment creditor has had an opportunity to reach assets."  *Bank of Aspen v. Fox Cartage, Inc.*, 533 N.E.2d 1080, 1083 (Ill. 1989) (quoting *Kirchheimer Bros. Co. v. Jewelry Mine, Ltd.*, 426 N.E.2d 1110 (1981)).

13

31. Upon service of a citation, the judgment becomes a lien on the judgment debtor's assets. 735 ILCS 5/2-1402(m)(1). A corporation that is a judgment debtor and has been served with a citation to discover assets is prohibited from making any payments before making payment to the judgment creditor. *See City of Chi. v. Air Auto Leasing Co.*, 697 N.E.2d 788, 791 (Ill. App. Ct. 1998).

32. The August 17, 2011, Citation to Discover Assets was issued in accordance with 735 ILCS 5/2-1402 and Ill. Sup. Ct. Rule 277.

## B. THE CITATION WAS PROPERLY SERVED ON T. MANNING CONCRETE, INC.

33. Illinois law provides that "[a] supplementary proceeding shall be commenced by the service of a citation issued by the clerk. The procedure for conducting supplementary proceedings shall be prescribed by rules." 735 ILCS 5/2-1402(a). Supplementary proceedings are governed by Illinois Supreme Court Rule 277(c) which states in relevant part: "The citation shall be served and returned in the manner provided by rule for service, otherwise than by publication, of a notice of additional relief upon a party in default."

34. The parties agree Illinois Supreme Court Rule 105(b) governs the service of citations to discover assets. Under Illinois Supreme Court Rule 105(b)(2), service of citations to discover assets may be served by "prepaid certified or registered mail addressed to the party, return receipt requested, showing to whom delivered and the date and address of delivery. The notice shall be sent 'restricted delivery' when service is directed to a natural

person. Service is not complete until the notice is received by the defendant, and the registry receipt is *prima facie* evidence thereof."

35. Service did not need to be sent via "restricted delivery." The Citation was issued to a company, not a natural person. *See In re Prairie Trunk Ry.*, 125 B.R. 217 (Bankr. N.D. Ill. 1991) ("It is virtually universally held, however, that those provisions of the Bankruptcy Code are applicable only to natural persons (human beings) who seek relief as debtors, not artificial persons like corporations, partnerships and other such entities."). Recently, courts applying Illinois law in various contexts have held that while "person" may be defined to include natural persons as well as entities, the use of "natural" eliminates corporations. *See, e.g.*, *Maxum Indem. Co. v. Eclipse Mfg. Co.*, No. 06 C 4946, 2011 U.S. Dist. LEXIS 62859, at *26-30 (N.D. Ill. June 13, 2011) (discussing the dictionary definition of person to include natural persons and business entities); *Brooks v. Union Pac. R.R.*, No. 05 C 4982, 2006 U.S. Dist. LEXIS 76056, at *9-10 (N.D. Ill. Oct. 6, 2006) (noting the different between service of process on a natural person and on a corporation or governmental entity).

36. The fact that the Citation was served on the Company in "care of" individuals who are indisputably "natural persons" does not trigger the restricted delivery requirement. To effect service on a corporation, an individual must be identified and a person must sign on behalf of the corporation. A decision that sending service to a corporation in "care of" an individual triggers "restricted delivery" requirements would mean that practically all service on corporations is the same as service directed at a natural person. If this was the case, the statute would not specify additional requirements where the defendant is a natural

person. Thus, the registry receipts submitted by Plaintiffs constitute *prima facie* evidence that notice of the Citation was received.

37.   Even if restricted delivery was technically required, failure to follow the strict requirements does not necessarily constitute deprivation of notice where notice was actually received. *See, e.g.*, *Wachovia Sec., LLC v. Loop Corp.*, No. 05 CV 3788, 2011 U.S. Dist. LEXIS 49537, at *4-5 (N.D. Ill. May 9, 2011) (quoting *Manley Motor Sales Co. v. Kennedy,* 419 N.E.2d 947, 950 (Ill. App. Ct. 1981)) ("[T]he service rules exist primarily to ensure that due process requirements are met, and this court has been reluctant to 'elevate form over substance' in these matters.  Due Process requires 'reasonable assurance that notice was actually given to the party.'").

38.   Illinois courts have interpreted notice requirements by examining how effectively a party did in fact notify the other side, rather than ruling solely on whether every particular phrase of the notice statute was followed in exact detail. *Matthews Roofing Co. v. Cmty. Bank & Trust Co.*, 550 N.E.2d 1189, 1193 (Ill. App. Ct. 1990).   Moreover, Illinois law appears to leave the procedure to be followed in supplementary proceedings largely to the judge's discretion. *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1226 (7th Cir. 1993).

39.   While the Court finds that Respondent had actual notice of the Citation, constructive notice would also be sufficient.  Constructive notice, namely  "awareness of facts sufficient to cause a reasonable person to inquire further, is adequate notice to a corporate officer of the existence of a court order to satisfy due process.... [I]n the context of civil contempt, notice of the court order, whether actual or constructive, is notice of the

order's existence, not of its precise terms." *Cent. States Se. & Sw. Areas Health & Welfare & Pension Funds v. Transcon Lines*, No. 90 C 1853, 1995 U.S. Dist. LEXIS 11372, at *22-23 (N.D. Ill. Aug. 8, 1995).  The court in *Central States* further explained that "where a corporate officer knows a court order has been entered against the corporation, but fails to inquire, as a reasonable person would, as to the terms of the order, he may properly be held in contempt.  A rule which would allow a corporate officer to remain deliberately ignorant of the particulars of a court order, and thereby avoid a contempt citation, would defy common sense." *Id.* at 23.

40.  The service of the Citation upon the Company's Registered Agent, the Company's counsel, and to Manning at the Company's address, signed upon receipt, constitutes proper service.  Plaintiffs have provided *prima facie* evidence that the Funds served the Citation on T. Manning Concrete, Inc., by its registered agent, on August 19, 2011 and at the Company's address, care of Thomas Manning, on August 22, 2011.

41.  The Court finds that Tom Manning had both actual and constructive notice of the Citation prior to transferring and disposing of the Company's assets, as evidenced by delivery of the Citation at his office and phone conversations with Ward and the Company's attorneys regarding the Citation.

42.  Service of the Citation created a judgment lien "upon all personal property belonging to the judgment debtor in the possession or control" of the judgment debtor or a third party as well as property which may "thereafter be acquired or come due to the judgment debtor to the time of the disposition of the citation." 735 ILCS 5/2-1402(m)(1).

## C.  VIOLATION OF A CITATION TO DISCOVER ASSETS AND CONTEMPT OF COURT.

43.   Illinois law provides that a court may punish violations of the restraining provision of a citation as follows: "The court may punish any party who violates the restraining provision of a citation as and for a contempt, or if the party is a third party may enter judgment against him or her in the amount of the unpaid portion of the judgment and costs allowable under this Section, or in the amount of the value of the property transferred, whichever is lesser."  735 ILCS 5/2-1402(f)(1).

44.  Illinois Supreme Court Rule 277(h) further provides that "[a]ny person who fails to obey a citation . . . may be punished for contempt."  The citation thus provides notice to the respondent that "if he transfers property subject to the supplementary proceeding, thereby attempting to impede the administration of justice, and places the property beyond the reach of the court, he will be punished either by having a judgment entered against him for the amount of the judgment creditor's claim or the value of the property, whichever is less, or may be punished as and for contempt."  *Shales v. Lanas Constr.*,  No. 07 C 2970, 2010 U.S. Dist. LEXIS, at * 11 (N.D. Ill. Sept. 24, 2010) (quoting *Bank of Aspen*, 533 N.E.2d at 1083).

45.  Contempt can be either criminal or civil.  It is the character and purpose of the punishment that distinguishes between the two.  *In re Contempt Finding in U.S. v. Stevens*, 663 F.3d 1270, 1274 (D.C. Cir. 2011) (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441 (1911)).  Criminal contempt requires the protections the Constitution guarantees for criminal proceedings, including proof beyond a reasonable doubt.  *United*

*States v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001). Contempt is criminal in nature if the purpose is to punish the contemnor, vindicate the court's authority, or deter future conduct. *Id.* Civil contempt, by contrast, can be coercive or remedial. *Id.* Sanctions in civil contempt are designed to either compel a party into compliance with an existing court order or compensate the complainant for losses sustained as a result of the contemnor's disobedience. *Id.* If a sanction is designed to compensate for harm done, the contempt is civil in nature. *Id.* A court's civil contempt power is based in its inherent limited authority to enforce compliance with court orders. *Id.* at 699.

46. Under Illinois Supreme Court Rule 277, the court has "discretion as to the nature of the sanction to impose for violating the order." *Star Ins. Co. v. Risk Marketing Group Inc.*, 561 F.3d 656, 663 (7th Cir. 2009).

47. The Court finds the current proceeding is one for civil contempt, as the purpose is to compensate for losses sustained as a result of Respondent's disobedience. Similarly, parties may be held in civil contempt of court where they are found to have violated an injunction issued by the court. *See, e.g.*, *Sec. & Exch. Comm'n v. Homa*, 514 F.3d 661, 676 (7th Cir. 2009) (affirming a finding of civil contempt for violation of an order freezing assets); *Select Med. Corp. v. Cash Flow Consultants, Inc.*, No. 09 C 8066, 2010 U.S. Dist. LEXIS 73847, at * 3 (N.D. Ill. July 20, 2010) (finding civil contempt for violation of a preliminary injunction).

48. The standard of proof for civil contempt is clear and convincing. *Dowell*, 257 F.3d at 699; *Bailey v. Roob*, 567 F.3d 930, 933-36 (7th Cir. 2009 ) ; *Select Med. Corp.*, 2010

U.S. Dist. LEXIS 73847, at * 3 (applying *Dowell*). The court does not have to find that the violation was wilful, and may find a party in civil contempt if that party has not been reasonably diligent and energetic in attempting to accomplish what was ordered. *Select Med. Corp.*, 2010 U.S. Dist. LEXIS 73847, at *3 (citing *Goluba v. Sch. Dist. of Ripon*, 45 F.3d 1035, 1037 (7th Cir. 1995)).

49.  In a contempt proceeding, the moving party must establish by clear and convincing evidence that: "(1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply." *W. Bend Mut. Ins. Co. v. Belmont St. Corp.*, No. 09 C 354, 2010 U.S. Dist. LEXIS 136267, at *39 (N.D. Ill. Dec. 23, 2011); *see also Dowell*, 257 F.3d at 699; *Select Med. Corp.,* 2010 U.S. Dist. LEXIS 73847, at * 3.

**D.  PLAINTIFFS DID NOT WAIVE THE ARGUMENT THAT THE DISPOSAL OF $41,700.78 VIOLATED THE CITATION TO DISCOVER ASSETS BY FIRST RAISING IT IN THEIR REPLY BRIEF.**

50.  Plaintiffs raised the issue of the expenditure of $41,700.78 in their reply brief. Generally, arguments raised for the first time in a reply brief are waived. *See Louisma v. Automated Fin., LLC*, No. 11 C 2104, 2011 U.S. Dist. LEXIS 124233, at *8 (N.D. Ill. Oct. 27, 2011). Allowing parties to raise new arguments in reply briefs should be avoided so as to allow the non-moving party to fully respond to all arguments and allegations. *Id.* at *8 n.1; *see also Only the First, LTD. v. Seiko Epson Corp.*, No. 07-cv-1333 consol. with 09-cv-4655, 2011 U.S. Dist. LEXIS 113525, at * 29 n.6 (N.D. Ill. Sept. 30, 2011) (allowing a sur-

reply to assure that the opponent of a motion was not deprived of a meaningful opportunity to respond to the arguments).

51. In the case at bar, Respondent learned at the time of the filing of the reply on November 8, 2011, that Plaintiffs were arguing the expenditure of funds from the account violated the citation. Dkt. 77. Since that date, a motion hearing was held on December 6, 2011, limited discovery was extended, an evidentiary hearing was held on February 8, 2012, and closing arguments were heard on February 10, 2012. Dkts. 79, 92, 94. Respondent has had ample opportunity to argue that his direction to issue approximately $80,000 in checks from the Golden Eagle bank account, $41,700.78 of which cleared the account, was not in violation of the Citation to Discover Assets.

### E. RESPONDENT THOMAS MANNING ACTED IN CONTEMPT OF COURT BY CAUSING $41,700.78 TO BE DISBURSED FROM THE GOLDEN EAGLE COMMUNITY BANK ACCOUNT IN VIOLATION OF THE CITATION TO DISCOVER ASSETS.

52. The opening of a bank account in T. Manning Concrete Inc.'s name and depositing T. Manning Concrete, Inc.'s funds into that account does not, in and of itself, constitute a violation of the Citation. It was not improper for Manning to deposit the $100.00 and $113,988.18 checks into an account where it would be held in the Company's name.

53. Similarly, this Court will not punish Respondent for using his personal funds to pay Company debts, namely payroll for employees who received checks that Golden Eagle subsequently did not honor. Respondent used his personal funds to pay company debts (primarily payroll), accepted assignment of the rights of employees who received wage

payment from him, and subsequently asserted a priority to those funds in the bankruptcy proceeding. While the Court recognizes that this may enable Respondent to have made payments after the Citation was issued and eventually recoup that money, the Court is only concerned with clear violations of the unequivocal command in the Citation. Using personal funds to pay Company debts and subsequently trying to recover that money in the bankruptcy proceeding is not a violation of the Citation. It is the responsibility of the bankruptcy court to determine whether Respondent can recover that money.

54. However, the expenditure of $40,700.78 of the Company's funds from the Golden Eagle Community Bank account after Respondent was aware of the Citation to Discover Assets is a violation and Respondent acted in contempt of this Court when he directed that checks be issued from that account. It is clear that Respondent's objective was to keep control of the $114,088.18 because he knew that all of the existing company accounts were frozen. His actions show a blatant disregard of this Court's Citation and the Court finds that Manning's actions were calculated to remove the funds from the reach of the Court and the Funds.

55. The Citation set forth a clear and unequivocal command that T. Manning Concrete, Inc. was prohibited from making or allowing any transfer or other disposition of, or interfering with, any not-exempt property. Subsequent to August 22, 2011, Thomas Manning, acting as President of the Company, opened a new bank account in the Company's name, deposited Company assets into that account, and subsequently caused assets of the Company *to be disbursed from that account*, thereby constituting an illegal disposition of

those assets. As such, Manning violated the Citation. *See, e.g.*, *Shales v. Lanas Constr.*, No. 07 C 2970, 2010 U.S. Dist. LEXIS 101577, at *23 (N.D. Ill. Sept. 24, 2011) (holding a corporate officer liable for transfers made from company assets after a citation to discover assets was served but before a bankruptcy proceeding was initiated)*; W. Bend Mut. Ins. Co.,* 2010 U.S. Dist. LEXIS 136267, at *31("The law is clear that a citation to discover assets prohibits the cited party from transferring assets presently in its possession or that later come into its possession."); *Divane v. Sunstrand Elec. Co.*, No 03 C 5728, 2004 U.S. Dist LEXIS 10768, at *5 (N.D. Ill. June 14, 2004) ("A corporate officers's transfer of assets in the ordinary course of business of the cited judgment debtor is a violation of the prohibition of the citation."); *Laborers' Pension Fund v. Dominic Jr., Inc.*, No. 02 C 3321, 2003 WL 21310282, at *3 (N.D. Ill. June 5, 2003) (hereinafter "*Dominic Jr., Inc.*") (Report and Recommendation adopted by district judge on July 2, 2003 (No. 02 C 3321, Dkt. 40)) ("[I]t is clear that Dominic Giannini, Jr. violated the citation by issuing checks from the corporate account of Defendant after the service of the citation, regardless of whether the check was to pay a business expense."); *City of Chi.*, 697 N.E.2d at 792 ("The circuit court erred by refusing to hold respondent liable for the amount he transferred out of defendant's checking accounts after the City had established its judgment lien on defendant's property.").

56. The disposal of Company assets was a significant violation of the Citation and Respondent Manning failed to make reasonable and diligent efforts to comply with its terms.

57. The statute creates only two exceptions to the prohibition on transfer: 1) transfers of property exempt from the enforcement of the judgment and 2) property in excess of an

amount that is double the balance due on the judgment. 735 ILCS 5/2-1402(f)(1); *see City of Chi.*, 697 N.E.2d. at 791. Courts have consistently condemned any deviation from this directive. *W. Bend Mut. Ins. Co.,* 2010 U.S. Dist. LEXIS 136267, at *32 (citation omitted). Manning has not asserted, and the Court does not find, that the funds transferred fall within either exception.

58. Where a corporate officer violates a citation to discover assets, the court may hold him in contempt of court. *See, e.g.*, *Shales*, 2010 U.S. Dist. LEXIS 101577, at * 25 (granting a motion for contempt against the president of defendant company for violation of a citation to discover assets); *Dominic Jr., Inc.*, 2003 WL 21310282, at *4 (same).

59. Plaintiffs have shown, by clear and convincing evidence,[6] that Tom Manning acted in contempt of court when he caused $40,700.78 of the Company's assets to be disposed of in violation of the Citation and the Court accordingly finds him in contempt of court.

## F.    RESPONDENT TOM MANNING IS PERSONALLY LIABLE FOR THE $40,700.78 IN COMPANY ASSETS THAT HE CAUSED TO BE TRANSFERRED.

60. Under Illinois law, corporate officers "are obligated to obey judicial orders directed at their corporations," and are personally liable when they permit the corporation to make non-exempt payments in violation of the citation. *Laborers' Pension Fund v. A&C Envtl., Inc.*, No. 99 C 8300, 2005 WL 994525, at *2 (N.D. Ill. Apr. 19, 2005) (hereinafter "*A&C Envtl., Inc.*") (collecting cases). A corporate officer's transfer of assets of the cited

---

[6]The Court would make the same finding if the standard was beyond a reasonable doubt.

judgment debtor is a violation of the prohibitions of the citation. *See Divane*, 2004 U.S. Dist. LEXIS 10768, at *5.

61. As the contemptuous act by Manning took place before the bankruptcy was filed and the resulting automatic stay was put in place, he may be held liable for transfers that pre-dated that filing. Thus, Manning is personally liable for the $40,700.78 transferred in violation of the citation. *See, e.g.*, *Shales*, 2010 U.S. Dist. LEXIS 101577, at *24 ("The Court concludes that Mr. Lanas may be held liable only for the transfers that predate the chapter 11 case and that followed the case's dismissal.").

62. The automatic stay imposed as a result of T. Manning Concrete, Inc.'s bankruptcy proceedings does not bar this Court from entering a judgment against Manning given that he is a non-bankrupt third party to that action. *Divane*, 2004 WL 1323287, at *3 (holding that the automatic stay did not bar actions against the company's president because he was not a debtor in the bankruptcy case). As sole shareholder and President of T. Manning Concrete, Inc., Manning violated the Citation and is personally liable for the transfer of Company assets after service of the Citation. *See Dominic Jr., Inc.*, 2003 WL 21310282, at *3-4 ("Thus, this court concludes and finds that Defendant, through its president, Dominic Giannini, Jr., violated the citation by issuing checks from Defendant's accounts in the amount of $86,202.22 after being served with the citation. Pursuant to the *Air Auto* decision, Dominic Giannini, Jr. is personally liable for the amounts that he caused to be transferred from the accounts of Defendant after the service of the citation, in the amount of $86,202.22.... For the foregoing reasons, this court respectfully recommends that Defendant

Dominic Jr., Inc. and its president Dominic Giannini, Jr. be found in contempt of court for violation of the lien imposed at the time of the service of the citation to discover assets, and that judgment be entered against Dominic Giannini, Jr. personally in the amount $86,202.22.").

63. The *Dominic, Jr.* case is strikingly similar to this case in that Dominic Giannini, Jr., President and soleshareholder of Dominic Giannini, Jr., Inc. issued checks, some of which went to employees, from a corporate account of the defendant company after service of a citation to discover assets. The money was no longer in the company's possession. The Court found Giannini in contempt of court (presumably civil though the court did not explicitly address that point) and held Giannini personally responsible for the amount of money that cleared the company's account.

64. Tom Manning is personally liable for $40,700.78.

**G. RESPONDENT TOM MANNING IS TO RESTORE $40,700.78 TO THE COMPANY'S ACCOUNT AT GOLD EAGLE COMMUNITY BANK, WHICH IS WHERE IT WOULD HAVE BEEN HELD PURSUANT TO THE CITATION TO DISCOVER ASSETS.**

65. Absent the intervening bankruptcy, the Court would typically award the $40,700.78 directly to Plaintiffs. The Funds have taken every appropriate step and have been extraordinarily diligent in pursuing their judgment. However, the Court believes that the most prudent exercise of its authority is to order that the money be restored to the Company's Golden Eagle Community Bank account to be subject to the jurisdiction of the bankruptcy court.

66. The citation is valid until it is avoided, so the Funds have standing to enforce the citation to discover assets. *See Shales*, 2010 U.S. Dist. LEXIS 101577, at *15 ("The Court concludes that the citation remained in effect during the pendency of the bankruptcy petition, subject to the right of the debtor to petition the bankruptcy court for relief from the citation."). However, as a result of the bankruptcy filing, Plaintiffs have not necessarily suffered direct damages in this case. As is clear in their own exhibit, $72,387.40 remains in the Golden Eagle Community Bank account. Pls.' Ex. D.

67. As discussed above, civil contempt is coercive or remedial while criminal contempt is aimed at punishment, vindicating the court's authority, or deterring future conduct. *Dowell*, 257 F.3d at 699. To order that the money be paid to the Funds when it is unclear whether the Funds have suffered any damages would imply that the award was punitive, making this proceeding akin to a criminal contempt proceeding.

68. The Court recognizes that the posture of this case is somewhat awkward, as the bankruptcy is an ongoing matter. In most cases dealing with violations of citations to discover assets, it is clear that the moving party would be entitled to the money if the contemnor had not disposed of them. In the cases where there is a dispute, courts are able to determine priority to the funds. *See, e.g.*, *W. Bend Mut. Ins. Co.*, 2010 U.S. Dist. LEXIS 136267, at *34-35 (deciding a lien priority issue and declining to order a third party to turnover funds despite receiving the funds in violation of a citation to discover assets); *A&C Envtl.*, 2005 WL 994525, at *3 (determining the seniority of a security interest).

69.  In this case, determining priority to the $40,700.78 is outside of the Court's province.  Thus, the Court finds it is most appropriate to order Tom Manning to replace the $40,700.78 that he caused to be transferred from the Company's assets back into the Company's account.

## H.    PLAINTIFFS ARE AWARDED $18,309.50 IN ATTORNEY FEES AND COURT COSTS ASSOCIATED WITH THIS LITIGATION. RESPONDENT MANNING IS ORDERED TO PAY THIS AMOUNT DIRECTLY TO THE FUNDS.

70.  Plaintiffs seek attorney fees in the amount of $16,059.75 and costs of $2,249.75 related to pursuing this motion for contempt.  Per the Court's direction at trial, Plaintiffs filed a fee petition.  Dkts. 95, 96.  Respondent filed objections.  Dkt. 99.

71.  Federal courts have the inherent power to punish parties who abuse the judicial process.  *Spartan Tool, L.L.C. v. Edwards*, No. 07 C 5508, 2010 U.S. Dist. LEXIS 13497, at *4 (Feb. 17, 2010).  Where bad faith is shown, sanctions in the form of attorney's fees vindicate the court's authority without resorting to a more drastic measure and serve to make the moving party whole.  *Id.* (awarding attorney fees "either as a sanction against Defendant or as consequential damages for Defendant's violation of the agreed upon final judgment order...").

72.  Local Rule 37.1 applies to contempt proceedings and provides that "[a] reasonable counsel fee, necessitated by the contempt proceeding, may be included as an item of damage."  Local Rule 37.1(a).  Respondent asks the Court to defer its ruling on the fee petition until the bankruptcy trustee determines whether he will seek disgorgement of any

funds Plaintiffs have already obtained through the citation proceeding. The Court declines to defer its ruling on the fee petition. Tom Manning violated an order of this Court when he caused the distribution of Company assets and the Court may enforce compliance with its own order against a non-bankrupt respondent. *See e.g., Shales*, 2010 U.S. Dist. LEXIS 101577, at *15.

73. The costs of enforcing compliance can be awarded to the moving party where a violation has occurred, even if the plaintiff does not directly recover, in part to induce an offending party to comply with future court orders. *See, e.g.*, *W. Bend Mut. Ins. Co.*, 2010 U.S. Dist. LEXIS 136267, at *42 (ordering the respondent to pay reasonable costs associated with the motion even though the plaintiff was not entitled to the money transferred in violation of the citation); *Spartan Tool, L.L.C. v. Edwards*, No. 07 C 55508, 2010 U.S. Dist LEXIS 13497, at *7-8 (N.D. Ill. Feb. 17, 2010) (awarding fees and rejecting the argument that because the plaintiff suffered no damages, no sanctions against defendant were warranted where defendant violated a final judgment order).

74. It is clear that Manning violated the Citation. Once Plaintiffs learned of the violation, they necessarily expended money to investigate the non-compliance and prevent further disposal of Company assets to which they may eventually be entitled. *See, e.g.*, *Spartan Tool*, 2010 U.S. Dist LEXIS 13497, at *8-9.

75. As discussed, sanctions in civil contempt are to either compel a contemnor into compliance or compensate the complainant for losses sustained. *Dowell*, 257 F.3d at 699. The award of attorney fees in the case at bar, consistent with civil contempt, is remedial and

is intended to compensate the Funds for losses sustained due to Respondent's violation of the Citation. Because Respondent clearly violated the terms of the Citation, the Court orders him to pay a reasonable counsel fee and reasonable costs associated with bringing this motion, in accordance with Local Rule 37.1 and 735 ILCS 5/2-1402(h).

76. "A request for attorney's fees should not result in a second major litigation." *Johnson v. GDF, Inc.*, No. 07 CV 3996, 2012 U.S. App. LEXIS 2810, at *2 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). "While there is no precise formula for determining reasonable attorney's fees, the court should begin by calculating the attorney's reasonable hourly rate multiplied by the number of hours reasonably expended and then should adjust that figure to reflect various factors including the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Spartan Tool*, 2010 U.S. Dist LEXIS 13497, at * 8-9.

77. The billing slips submitted by Plaintiffs reflect 85.5 hours of work related solely to the Citation to Discover Assets involved in this case and the motion for contempt, totaling $16,059.75 in attorney's fees. Dkt. 95-1 E x. B. An affidavit from the Funds' lead counsel, Michelle Reynolds, attests that Plaintiffs are charged $200.00 per hour for work completed by Reynolds and other partners; $155.00 per hour for work completed by associates; and $95.00 per hour for work completed by law clerks and paralegals. Dkt. 95-1 ¶4. The Court has reviewed the billing records submitted by the Funds' counsel and finds that the records are eminently reasonable, both in rate charged and in time expended. Counsel for the Funds,

and Reynolds in particular, have conducted themselves in a professional and efficient manner throughout what was undoubtedly a frustrating process.

78.  The Funds have succeeded in showing that Respondent acted in contempt of court when he violated the Citation and have convinced the Court that he is personally responsible for restoring the assets of the Company which he caused to be disbursed.

79.  The Court will award fees for internal conferences involving two partners, or consultation between a partner and an associate.  Those charges are not duplicative, but are a reasonable part of pursuing a complex and unusual matter.

80.  The Court finds that all billing entries are supported by sufficient detail.  Finally, the Court does not find it unreasonable to award $280.25 in fees billed at the $95.00 rate (law clerk and paralegals) for preparing documents for e-filing and e-filing documents.

81.  The Court awards the Funds $18.309.50 in fees and costs.  This represents $16,059.75 in reasonable attorney fees and reasonable costs of $2,249.75 related directly to the supplementary proceeding at issue in this case and the pursuit of the motion for contempt against Thomas Manning, individually.

## IV.  CONCLUSION

For the reasons set forth in this opinion, the Court finds that Thomas Manning, individually, acted in contempt of court when he directed $40,700.78 of T. Manning Concrete, Inc.'s assets to be disbursed in violation of a valid citation to discover assets, of which he was aware.  Respondent Manning is to restore $40,700.78 to the Company's account at Golden Eagle Community Bank.  Further, judgment is entered in favor of the Funds and against Respondent Thomas Manning in the amount of $18,309.50 for attorney fees and court costs.

SO ORDERED THIS 13TH DAY OF MARCH, 2012.

_Morton Denlow_

_____
**MORTON DENLOW
UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

J. Peter Dowd
Michele M. Reynolds
Josiah A. Groff
Jeremy M. Barr
Dowd, Bloch & Bennett
8 South Michigan Avenue
19th Floor
Chicago, IL 60603

**Counsel for Plaintiffs**

Robert J. Trizna
Richard H. Fimoff
Robbins, Salomon & Patt Ltd.
25 East Washington Street
Suite 1000
Chicago, IL 60602

**Counsel for Respondent**